I'm Justice Walker. I also have on this panel with me Justice Pierce and Justice Coghlan, and I'd like to ask the attorneys if you can take a minute to introduce yourselves. Good afternoon, Your Honors. This is Christopher Gallinari of Flaherty and Youngerman for the Appellant 21 Christian Condominium Association. Okay, thank you. Jeremy Krieger for the Appellees. Good afternoon, Your Honors. Thank you. Good afternoon. And I need to ask each one of you how much time do you believe you'll need? We're usually pretty flexible on our time. We do have another case after this one, but we're flexible. How much time do you need? On behalf of the Appellant, I don't believe I would need any more than 10 minutes, and I would like to reserve some additional time beyond that for rebuttal, no more than five. Sure, okay. And Mr. Krieger? 10 to 15 minutes maximum. Okay, all right. And now what will happen is sometimes we do ask a lot of questions, and if we do and you run out of time because of our questions, first of all, if the justices are still asking questions, you may end up going longer than the time that you've been allotted because justices are allowed to ask questions until they're written, so they're done. But if they're asking you questions and you don't get a chance to make a really important argument that you wanted to make, we will always give you an opportunity to do that, especially if it's our questions that's preventing you from arguing. So we're pretty patient. All right, so go ahead, Mr. Gallinero, please get started. Thank you very much. May it please the court. This is an appeal from an order granting a motion to dismiss the association's pleading. The record is the allegations in our pleading and the exhibits to that pleading. If there's any set of facts that could be proven under that pleading that would entitle the association to relief, then the circuit court's dismissal of that pleading was erroneous. The circuit court was required to consider all factual allegations as well as all inferences to be drawn from those allegations. And in pleading, we're required to only contain the ultimate facts, not the to prove them. So the issue here is not whether the association has come forward with sufficient evidence to prove its claim. Instead, the issue is whether there's any set of facts that could be proven under the association's pleading that would entitle it to relief, considering as true for purposes of this appeal, all the factual allegations and all of the inferences to be drawn from them. The circuit court found that the association had failed to allege a duty owed by defendants to the association's unit purchasers, because only the developer owed a duty to the association's unit purchasers under section 22E4 of the Condominium Act. That was error, because it overlooked that our claim is not for a violation of section 22E4 of the Act, but instead for common law negligence. And under section 552 of the restatement, as well as under and Duhl, the cases we cited to in our brief, a duty can exist where a loss is suffered by one of a limited group of persons for whose benefit and guidance the speaker intends to supply the information or knows that the recipient intends to supply it. There's no requirement of contractual privity between the defendants and the association's unit purchasers, whereas here defendants were in the business of supplying information for the guidance of others in their business transactions. And we cite to Tolan and Duhl in our brief. Our claim may be based on the defendant's failure to provide adequate information, as well as upon providing information that is false. And we cite to Zimmerman in our brief for that. We cite the trial court specifically. Note, though, that there was no duty also because the report seemed to have limited this to be used for specifically for just the developer and that it wasn't intended to benefit anyone else. I don't know whether the circuit court focused on that, but certainly that is part of the argument that the appellees have made. And we cite two cases, Kelly from within Illinois and Eteladju, the northern district case, and other cases from outside Illinois that say where the facts and circumstances indicate that a condominium conversion was underway by the developer. And whereas here the engineer is providing a report that not only and things going out into the future that would be the sort of information that would be expected to be relied upon, not only by the developer, but by the people who were engaged in commercial transactions with the developer, such as the purchasers, under these facts and circumstances, we believe that a duty exists and that the circuit court was erroneous in neglecting those the claim. So not only are there decisions following Rosny in the absence of contractual privy like Kelly and Pershall and Kleekhan that we slighted to in our brief, there's also the factors that allowing a claim here promotes the public policy goals recognized in Rosny of not requiring innocent, reliant parties to carry the burden of an engineer's professional mistakes, as well as promoting cautionary techniques among engineers. And we cited to decisions from other jurisdictions that are in accord, Dorset, Larson, Eteladju, Christich, Gavit, and Stadler. I believe the language of the property condition assessment supports our position. The report contains a warrant fee that it is promulgated in accordance with ASTM standards, ASTM International, formerly known as the American Society for Testing and Materials. The standard was developed to provide individuals, including prospective buyers, with qualified professional judgments. And this was a report that was received by purchasers from the developer, not from an intermediary or from some other person, as part of a package of information that was legally required to be provided to them, including an engineer's report. And where the report refers to both the developer as a client and the third person and makes references to you, which could be taken to mean a recipient from the developer for purposes of obtaining that information that the developer was required to provide under statute, at the very least, in addition to the cases like Kelly and Eteladju and Stadler that say a claim can exist even where the report states that it is for the use of someone other than the plaintiff, here you have an ambiguity within the document itself regarding the very argument that the affilies are trying to make, trying to limit our ability to rely upon the statements in that document. Eric, counsel, you're alleging that the engineer knew that this report was being generated for that specific purpose to show to prospective buyers. Am I correct? Yes, Your Honor. And just because the duty of Section 22E4 itself is imposed on the seller, that doesn't absolve defendants from their alleged negligence. For instance, in Kelly, the court held that the standards of the USPAP, that's, I guess, the uniform standards of professional appraisal practice, were relevant to whether the defendant breached a duty owed under common law, even though the USPAP itself did not create a duty owed by the defendant to the plaintiff. This case is very similar to that. In Gavit, the New Mexico case that we cited to in our brief title, I think it was five of the state sanitary code, was relevant to whether the defendant breached the duty of care it owed to the plaintiff, even though that statute itself did not create a duty owed by the defendant sewer inspector to the plaintiff. Rather, it created a condition that needed to be met for the property to be sold, and a similar situation exists here. The circuit court... I'm sorry, go ahead, Your Honor. You can go ahead. You can finish your thought. I was moving on to a new one, so if you want to ask me something about what I had just said, please. No, you can go ahead and finish. You can move on to your new thought. Very well, thank you, Your Honor. There was another argument that was raised by the appellees below regarding whether the association failed to allege misrepresentations of fact. The circuit court didn't agree with that argument, or at least it didn't state that it agreed with that argument. It didn't find that we'd failed to make those allegations. But whether the statement is one of fact or opinion also depends upon all of the facts and circumstances of the case where competing inferences can be drawn regarding whether the statement is one of fact or opinion. Those inferences cannot be resolved by a motion to dismiss, but instead remain questions for the trier effect. Going back, I think the same thing is true with respect to the language and the property condition assessment. What inferences can be drawn from that ambiguous language are debatable, but they're not something that can be we have Kelly from Illinois and Stotler and Etalaju from out-of-state and the Northern District of Illinois that show that even where you have clear language saying this is a report only for this person, if the surrounding facts and circumstances demonstrate an awareness of the condominium conversion and the developer offering units for sale to prospective purchasers, you're going to have an inference that can be drawn by a trier of fact if there's a disputed question regarding what the state of mind was. Well, but that's why I wanted to come back to the duty again. I wasn't sure where you were going at this point, but how far does it extend? Because this report was prepared a very long time ago. So let's assume that a particular unit has been sold five times, possibly six times since that report was prepared. So how far out does the duty of this engineer extend? It's an excellent question. Let me answer that, Justice Walker. We're talking about a section 22E4 obligation that the developer has to purchasers from the developer. The engineering report has to be included in that package of information that is to the extent that the purchaser of that unit may turn around and resell the unit. There's no obligation by statute for that engineering report to be included in any subsequent transaction or sale. That's not a condominium conversion at that point. At that point, it's just an individual unit to somebody else. We're talking about a report that was prepared in connection with the condominium conversion by the developer and the sales by the developer of the units in connection with that conversion. So we would say that's where the duty ends and it doesn't extend to resales by individual unit owners to people down the line. It's not like a covenant that we're not making that argument and we're not suggesting that that's the case. Now, and isn't it true that I'm changing the subject a little bit, but isn't it true that every time someone places a value on property that it's just her or his opinion or a value on cost of repairs or pretty much a value on anything, unless it gets to a point where that prediction of what someone might pay for something? I think you're going to something that I was going to be raising now. I think that what you were talking about is an implied assertion of fact where you're not just, you know, we're not just talking about somebody coming off the street saying, yeah, I like that. I would pay a hundred dollars for that. We're talking about a professional engineer held to the professional engineering standards and their professional qualifications and skill constitute an implied assertion of the knowledge of facts that would justify the opinion, which therefore makes it actionable. And we cited cases like Hyder and Schrager and Butita in our brief. This isn't just a naked opinion without any qualifications or standards or professionalism behind it. This is not just a statement of opinion by the seller. This is a statement of opinion by a professional third party who doesn't have any skin in the game, who's being brought in to offer a qualified professional judgment. It's very different from a statement by even a seller. So I think that even if you call it an opinion, it doesn't necessarily become the sort of opinion that is non actionable. It can be the under Illinois law. But even where you have statements regarding the evaluation of property and advising the seller for the price that it could be sold, you have that representation actionable and dual. Even where you have statements regarding the cost of an environmental cleanup before it incurs, where you're not really sure you have those statements actionable under Peter J Hartman, where you have the statute section 22 E4 saying that a statement of the present condition of all structural components will include a statement of the expected useful life of such items. I think that you have a statement from the Illinois state legislature saying that a statement of expected useful life by a professional engineer isn't just an opinion. And it isn't even a statement with respect to the future. It's an assessment under the structural component is. So for those additional reasons, it's also actionable. And then under Zimmerman, as we argue in our brief, it's not just what they say, but also their failure to act according to their duty to act with a reasonable degree of care to ascertain, disclose, and to not conceal the material facts. And we set forth all of the representations and omissions regarding the roof, the parking structure, and the elevators at pages 12 through 16 of our brief. So going back to the policies that the Supreme Court and Rosny emphasizes, I think we have here the importance of not having an innocent reliant party carrying the burden of an engineer's professional mistakes. And I think that we have the important opportunity to say that allowing this claim will promote cautionary techniques among engineers. Denying the claim will have the exact opposite incentive, which would be perverse and not promote commercial certainty. So for all of the, all of those reasons, I believe that the circuit court's order of dismissals should be reversed. I'd like to have some time to rebut anything that counsel for appellees may say. And if the panel has any further questions for me right now, I'd be happy to address them. All right. I don't think anyone has any questions right now. Thank you, Mr. Gallinari. Thank you. And Mr. Krieger, please. Thank you again. I'm Jeremy Krieger. I'm appearing on behalf of the appellees here. As an initial matter, I just want to address a couple of the items that counsel addressed before my remarks. Counsel has talked about cases where duty was found on engineers and uh, he even, I think a direct quote is, uh, even where the report States X, Y, and Z, uh, an action has been, has been found. There's not a single Illinois case supporting their position. And I caused it caution. The justice is to take a careful examination of the cases that are being cited and thrown around by name as standing for propositions that they do not actually stand. So that's, that's item one. Um, counsel just mentioned not concealing facts and an engineer's obligation, not to conceal facts. We we've, we've been over this multiple times in the trial court. This is not a fraudulent concealment claim. Counsel's partners made that expressly clear on the record multiple times. This has not been alleged to be a fraudulent concealment claim. Uh, they're, they're not setting forth a fraudulent concealment claim, and we are not arguing about a fraudulent concealment matter comes before you on the appeal of the defendants. If complaint, the fourth amended complaint, the underlying motion, the response, and the reply, as well as briefing here are all fundamentally the same. And there's good reason for that. The association's allegations of negligent mess representation are based on statements that are contained in the report. That's attached to the complaint as an exhibit. Those statements can't change made in 2006, notwithstanding the association's repeated efforts to amend its complaint. As a result, it remains a one count complaint or negligent mess rotation by pioneers professor, uh, sorry, predecessor 14 years ago. Uh, there are three bases that we argue in, in our, uh, in our police brief, uh, that the trial court's decision should be upheld here. The first, which the court did the lower court did not find to be the reason for dismissal, but we, we believe it is the reason of good reason for dismissal is that the alleged misrepresentations are not actionable misrepresentations of fact, but rather express estimates of a noble future conditions. Uh, that item two is that the plaintiff relies exclusively on section 22 of the, uh, Illinois condominium property act to shoehorn a non-existent duty on the part of the defendants to the plaintiff. And three plaintiff could not have reasonably relied on the report as it expressly cautions the reader that its contents are estimates concerning the normal lifespan of conditions. Um, taking the first item that I mentioned that these aren't actionable representations. It's important to remember that we have that written report here and that report is attached to the complaint as an exhibit and its contents control over any of the allegations. Uh, so, and plaintiff makes no allegation of an oral representation. So the association cannot plead around the nature of the actual representations. There are two categories of purported misrepresentations, uh, as alleged by the association contained in the report, that conditions were vaguely good. And to that, the remaining useful life of building condition as expressly defined, uh, by the terms remaining useful life and expected useful life in the reports, uh, are, are not factual, uh, as to vaguely good representations. They're not representations of fact as a matter of law, as the restatement provides matters of judgment, such as a statement that an object is in good condition, which is expressly what's at issue here are statements of opinion that are not actionable as to the remaining useful life and expected useful life terms. Those, those terms are expressly defined, uh, in the report attached to the complaint. I expected useful life is the estimated to function when installed new. And you seem to be skipping, you seem to be skipping the cost of, of, of repairs issue. I can address the cost of repairs issue. Now I will, I will get there if you prefer that I address it. No, no, you don't, you don't need to switch. It's just that I thought that that was sort of the third prong upon which they were, uh, the complaint was based, but you can continue. It's, it's, it's an interesting subject. Uh, your, your honors can expect a useful life, remaining useful life. I don't need to read that to you, see you here, but suffice us to say that they're expressly subjective estimates that are not actionable statements of existing fact. They are estimates as to a noble future condition and lifespan of buildings components. So when it's reply brief, which is what, what a justice Walker appears to be referencing, uh, plaintiff argues that there are other actionable costs, sorry, other actionable statements that are cost to repair those cost of repair statements, but plaintiff is playing fast and loose with its allegations concerning the cost of repair. It argues that it alleged that the cost of repair purportedly set out in the report was 27,000 as opposed to $27,000. That is as opposed to $336 and that's on page 15 of the report, but a careful reading of the plaintiff's complaint shows that the plaintiff alleges that the cost of those costs were to repair work after 2014, not at the time that the, uh, the, the report was made. So those heightened amounts concerned to concern the cost of repair in 2014, or even after rather than 2006, after all plaintiff reportedly only discovered the poor conditions of the parking garage, elevators, and roof when it obtained the coder study and repair estimates in 2014, as alleged in paragraphs 47 through 49 of the complaint. So there are no factual allegations that aren't those, aren't those more, this is a two, six, 15, correct. And aren't those more related to issues of proof rather than whether or not a cause of action has been stated issue here is whether or not a cause of action has been stated. Now there may be another issue of proof, which this court is not in position to decide at all. Uh, but that, do you see the difference there? I do understand the distinction, your honor. Uh, but, but it's, it's a matter of, there are a couple of things at play here. So what they've attempted to do is plead around the statute of limitations, right? So that the motion that, that is currently that was currently heard that the motion that's currently, uh, before, before the appellate court, or that was the basis of the granting of dismissal, uh, did not include a statute of limitations argument, although prior motions did. So what the association did was attempt to plead around the statute of limitations, but in doing so they pled their way out of court as to the factual nature of the purported misrepresentation, because they cannot say, and they have not pled that the cost to repair in 2006 was the amount stated. That amount is the coder study as expressly alleged in, in their paragraphs 47 through 49 of their complaint. So they pled their way out of court on that issue. And I understand why they did that. They have a statute of limitations issue, but that's why they haven't been able to pre plead, uh, the cost to at that time. So simply the alleged false statements in the report aren't actionable statements of fact, they're expressly estimates concerning the unknowable future condition of the properties elements. And that assumes that unknowable maintenance expressly assumes that unknowable maintenance and repairs were subsequently conducted. That's the entire basis of, of their, their misrepresentation claims. And they don't, they don't stand, uh, as statements of existing fact at the time that report was made. And for that reason alone, uh, dismissal should be upheld. I think judge, I think judge Walker hit on the right point. This is a six one five motion. Did they plead a cause of action? Your arguments seem to be that they can't prove their case. That's what your arguments seem to be. Those may be more appropriate arguments at summary judgment or trial or whatever, but right here, we're only concerned with whether the plaintiff pled, uh, cause of action that may or may not be successful. So I understand you're on this. Well, I know, but, but the, the, um, the defense always tries to couch things in, um, six one five theory by using evidentiary proof is the basis for their argument. And it just doesn't work in these types of situations. So the distinction in this is my comment. The distinction in this case is that, uh, we have the report and the report is an exhibit that controls. And this court has held repeatedly that six one five motions were dismissal with prejudice are appropriate when they're based on the statements and the contents of exhibits attached to the complaint, which we have here. Now I'm not the one making the allegations. Plaintiff is the one making the allegations and they're not maintaining that the actual costs, uh, to repair at the time of the report. If you look at their complaint at the time of the report were, uh, in excess of the amount that they were actually, uh, uh, stated in the report, the 2014 code report. If you look at the allegations of the complaint, as well as the Otis estimate, which is expressly obtained in, uh, 2014, where the basis expressed expressly alleged bases for those, uh, statements as to the actual amount, uh, that it took to repair. But wouldn't that, wouldn't that therefore be subject to a judge, a motion for judgment on the pleadings having nothing to do with six one five. In other words, you're saying that what they pled, they can't recover on. Well, that's not the standard at six one five. Maybe I understand the view that, uh, that six one five is, is rarely, uh, used dismissal with prejudice because of the idea that, uh, it is, it is here to see where we're here to see if the, the plaintiff could set forth a claim, but this court has, and six one five is the appropriate method here. And I cited in my standard of review section on page six of my brief that allegations and pleadings that conflict with fast disclosed and exhibits attached to pleadings are not admitted as true. And the exhibit controls when an exhibit attached to a complaint is the basis of the suit and conflicts with the complaints, allegation allegations. The exhibit negates the complaints allegations. And those are all cases. Uh, and I, they're, they're cited here. It's McCormick versus McCormick metric versus chats and ever cited earlier in the standard view that hold and uphold a trial court's decision to dismiss a claim on six one five with prejudice based on the complaints allegations, whether, whether it should be brought as a motion for some, uh, for judgment on the pleadings, uh, under six one five E uh, I, I don't believe that that's the, uh, the appropriate standard. I think that the standard is that the exhibit controls and the plaintiff has pledged its way out of court. And then the only way that a defendant can attack it is using six one five, because the complaint is an exhibit attached to the complaint. Sorry, the, the exhibit, the report upon which the plaintiff's claims are based is attached as an exhibit and control. Okay. Did you want to speak to the duty issue? Yes, I do. I was just making sure there are no, no other questions concerning the misrepresentation. So I'm sorry. Did you have anything else just as fierce on that or just this time? Okay. I'm sorry. I just didn't want you to miss out on that important issue. That's all it is. It is an important issue. So plaintiff has not and cannot allege that appellees owed a duty by virtue of a knowledge purportedly imputed to them by section 22 of the Illinois condominium property act. I'll refer to that as section 22, or the active, if that's fine with your honors. Uh, so in its reply, uh, plaintiff attempts to distance itself from its reliance on section 22. It goes so far as to argue that defendants misconstrue quote, misconstrue the claim is being brought under the act. And you heard that from, uh, my colleague, uh, earlier during his argument that's on page four of the reply, but then they move on to argue that the duty elements of its negligent misrepresentation claim was imposed by common law. The restatements section five, five, two, and Illinois case law as set forth in quote, pages 36 to 37 of their opening brief. Yet each paragraph, every single paragraph on pages 36 to 37 of the opening brief mentions discusses and analyzes section 22 of the act as the basis for the duty. It permeates every facet of plaintiff's arguments, uh, that deflected defendants or the duty to plaintiff and apparently plaintiff's minimum of 357 members. And until today, uh, those success, their successors in perpetuity, there was no case law in Illinois, imposing a duty on an engineer to indirect third parties who were allegedly handed a report by a developer, not a single one. There's no case law in Illinois that imposes a common law duty of any sort on one class of person. So how is this different from Rosney, uh, where, with the appraisal appraiser, I should say, how is this different? Because the court did impose a duty in that case. So if you, if you look at Rosney, there's the language concerning, uh, the, the very limited, uh, person that was going to receive the report. So we're talking about an appraiser's report of a finite value upon which a loan is, is obtained and based, uh, for that's going to be used, uh, for the purchaser. So it's, it's very different because it's a finite individual. And Rosney expressly States that in fact, appraisers, and this is throughout Illinois, there are multiple cases. I have to concede, uh, that say appraisers reports are, uh, can be, uh, the basis of negligent misrepresentation claims to third parties. That's the only exception to the rule that, uh, there, there can be no such claim. There's not a single other case holding anybody else responsible in Illinois. Now, Rosney relied on a case from California, however, in which involved an engineering farm and soil testing. So, yeah, so we're talking about M Miller. So these are cases that I implore your honors to read because they don't necessarily stand for the proposition side. So the plaintiff claims that M Miller and son stands for the proposition that negligent misrepresentations claims can be asserted against engineers. Miller didn't concern a negligent misrepresentation claim. It was a, it was a negligent breach of contract claim unique to California. Uh, and the analysis was a third beneficiary analysis under a contract. That's not what we have here. That was M Miller inside, but plaintiff continues to represent that it was a negligent misrepresentation claim. It simply was not. And I invite your honors to read that position. That case also expressly relied on, I I'm sorry, but I cannot pronounce the first name of the other case. It starts with the B versus Irving in 1958 case, which was also a negligent performance of a contract claim asserted by a third party. In that case, the court imposed liability in favor of an estate's beneficiary against a notary who falsely notarized a will. So Drozny has the language that it says, and I'll quote it because it's important as is apparent from the foregoing discussion, the factors we consider relevant to our holding here is that three, the fact that potential liability in this, in this case is restricted to a comparatively small group. And that ordinarily only one member of that group will suffer a loss. Only one. That's the, that's the cases upon which the, those are the cases upon which the, the appraiser liability cases stem from. They have no application here. There's not a single Illinois case expanding negligent misrepresentation claims beyond, and these circumstances beyond those of an appraiser, not one. And they had a scour, scour the United States and came up with, with those three, which aren't even negligent misrepresentation claims. They maintain continuously that they mentioned five, five, two section five, five, two of the restatement of torch. You can look at the decisions and search them as I did. That restatement section is not mentioned a single time. So are there any other questions related to that issue? Justice Walker? Well, yeah, just to the extent that the Iowa Supreme court did mention it and they, their case was similar to, it was also an appraisal case and they, they specifically referenced the restatement of torts and found that as long as the supplier of information intended to supply information to that person knew that the recipient intended to supply it, that there would be liability in their case, they affirmed a, a negligent misrepresentation case. But I won't ask you to get into that, but you probably, you're probably not familiar with that. I just happened to be licensed in Iowa. And so I took note of it, but that's, that's fine. Well, where it brings me, it brings me to, to, to the heart of the meat of the issue. And that's whether a statute that applies exclusively to here, a developer can be relied upon to impute a duty to someone who's not subject to that statute. They are shoehorning the statutory duties into a negligent misrepresentation duty. And there's not a single case in Illinois where that has been permitted in any circumstance. The statute here referenced no less than 34 times in, in the opening brief, 17 times throughout the 25 page reply. And in every single allegation concerning defendants reported knowledge in the complaint does not, as your honors know, any duty on the engineer. I'll, I'll save you reading from, from that, that section, but the word engineer appears once and it's in advance of the report. And it's not disputed here or in the lower court that a duty was that the statute imposes a duty only on sellers or developers and no one else. And then it provides a remedy. And the remedy is important because that remedy is under the statute, a rescission of the contract of the purchase contract here. If, if your honors uphold this as a negligent misrepresentation claim, where a duty is, is shoehorned in by, by the statute, the remedy would be far in excess of the remedy that the legislature has provided. The remedy that they're seeking is millions of dollars in monetary damages. So it's the, the, the basis for the duty is simply improper. You cannot use the statute to create a duty in a negligent misrepresentation. So we have no case law in Illinois, for the most part, interpreting this issue as to section 22, but we do have case law interpreting section it's sister provision in section 22.1. That's the Diatomo case where a subsequent purchaser sued the board and the seller of a condominium unit for misrepresenting the financial status of the, the association. The Diatomo courts held that there was only an action against the seller, not against the board. And what, even as it relates to the, the individual seller who was on the board, there could be no action stated against him for violations of the act because the duty, the analogous duty imposed under that statute is we have a, the seller is obligated to obtain from the, the board, the financials, the financials are the board is obligated to the financials. The board is the one who creates the financials and monitors the financials and then pass the passes them through the seller. The seller under that section 22.1 under Diatomo is the only party that was responsible for the contents of contents of those financials. And the court expressly dismissed the claim against the board and against the individual as a board member on that basis. If you want me to get into Dorset apartments, I I'm, I'm, I'm stunned that it keeps being brought up. It's an unpublished decision of a foreign trial court. It's the only, you don't need to get into an unpublished decision. And I'd like to admonish everyone that unpublished decisions should not be cited before this court. So to the unpublished decision. Thank you. Thank you, your honor. There are multiple, and those are the meat of, their substantive arguments are supported either by unpublished decisions of foreign trial courts or simply foreign trial courts, which have no, absolutely no precedential value before your eyes. So again, the, the, the act cannot be relied on to, to create or to impose a duty. You can't shoehorn a duty that's limited to one party under the act, and then warp the legislature's words into rating a cause of action that gives a higher remedy against a third party in a negligent misrepresentation claim. It's simply unsupported by any law. There's that third, the third argument that, that your honor should uphold the dismissal based on is that the association cannot allege that it reasonably relied on the reports contents, given the cautionary language the association can't save its claims with allegations, just conclusory allegations, which they are that it reasonably, or this purchasers reasonably relied on the statements because pioneers alleged predecessor made them knowing the report to be convicted would be conveyed. The report contains, and I'll spare you because they're, they're cited multiple times in my brief in my, in the underlying briefs. But suffice it to say that the report has cautionary language, saying that it's prepared for the sole use of the client, which is the developer can't be expressly cannot be relied upon by anybody else, but the developer that the contents of it are limited by the scope and intent of work mutually agreed upon by the client and pioneer and the work that it was actually performed in that while pioneer believed that the findings and conclusions were reasonable, it couldn't make any implied warranties or express warranties. And that's because expressly as set out in the report, any cost estimates associated with the PCA are intended to be opinions of probable costs and no assessment can eliminate the uncertainty regarding the potential for few physical deficiencies in connection with the property. And due to the limited nature of this, the scope of the work, which was, we're not conducting invasive testing. There is a possibility that conditions may exist, which could not be identified within the scope of the assessment. This language falls squarely within the bespeaks caution doctrine. It goes to the heart of this dispute that no person expert or otherwise can accurately predict a property's condition in the future 20 to 25 years, 15 years, or even five years in the future, based on work that has yet to be performed expressly and may not be performed. Plaintiffs conclusory allegations that unnamed purchasers recently relied on the statements overcome that cautionary language. The plaintiff's fifth amendment amended complaint, or sorry, the plaintiff's fifth complaint was properly dismissed. The exhibit negates its claim, as I previously discussed in the trial court should be approved. Thank you. Thank you, Mr. Krieger. I didn't want to interrupt your argument. I wanted to make a correction for this recording. I am admitted to practice law in the state of Iowa. I do not maintain my to do that. So I wanted to clarify that in case someone picks this up later and determine where he's no, he's not, he hasn't paid his fees. So just want to clarify that. Okay, so go ahead, Mr. Guilinieri. Thank you very much, Your Honor. With respect to our complaints. We do allege the cost. We do allege the actual remediation numbers as part of our allegations of negligent misrepresentation. But those aren't the only allegations with respect to the falseness regarding the amounts necessary to I direct the court to sub paragraph K and sub paragraph Q of paragraph 28 of our complaint, stating that the estimated cost of repairs to restore the elevators to good condition was $13,500 when the condition of the elevators at or about the time that the property condition assessment was prepared was such that the elevators required modernization and $13,500 of interior elevator improvements would not restore the elevators to good condition as substantially greater amounts were required. I think that you're right, Justice Walker, this raises an issue of proof. He can deny that if he likes, but he can't say I didn't allege it because I did. And we make the same kind of allegation with respect to the parking structure in sub paragraph Q. I think that what counsel is saying in essence is that Rosny should be limited to surveyors because there isn't a case where an engineer in connection with a condominium conversion has been held to the standards that these other kinds of real estate professionals have been held to. But we know that Rosny relied upon Biley versus Arthur Young, the Supreme Court of California decision. And the Supreme Court of California said the restatement second of torts approach is also the only one that achieves consistency in the law of negligent misrepresentation. Accountants are not unique in their position as suppliers of information and evaluations for the use and benefit of others. Other professionals, including attorneys, architects, engineers, title insurers, and abstractors, and others also perform that function. And like auditors, these professionals may also face suits by third claiming reliance on information and opinions generated in a professional capacity. That's this case. And for the Supreme Court to use Biley, which was an accountant case, but which said its reasoning wasn't limited to accountants, to use that reasoning in a surveyor case, I think is an indication by the Illinois Supreme Court and Rosny that its holding isn't limited just to surveyors. It's to all of these people in similar situations, including defendants here. I think that D'Automo, I think that in our reply brief, we did a good job of explaining why D'Automo doesn't support their exclusive remedy argument. Because in D'Automo, that statute, the cause of action under that statute wasn't even exclusive remedy there. The court allowed a breach of contract, a common law claim to proceed. And as we explained, the reason why there wasn't a common law claim for negligence against the seller is because of the economic loss rule. They're not falling within an exception, like we have here for people who provide information to guide others in their business transactions. I think you see something similar in Zimmerman, where there was a negligence claim that was permitted to proceed against the broker defendants, but not against the seller defendants. And the court in Zimmerman said that's because you don't have a negligence claim against them because of Mormon and you don't fall within an exception the way you do with the third party professional. Counsel is correct. I overspoke with respect to Zimmerman. There was a negligence claim, as well as a fraud claim. Our brief, at the last point of our brief, I think more accurately reflects our reliance upon Zimmerman. I'm not trying to suggest that we have a fraudulent misrepresentation claim here. We do not. It is a claim for negligent misrepresentation. But I don't think that that is a minor point, but I do want to correct what I had said, and counsel is correct to point that out. So I think that we did a very good job of rebutting the arguments in Appelie's brief, in our reply brief, and I haven't heard much here in our rebuttals in our reply brief. So again, I'd like to offer myself to the panel and be prepared to answer any further questions that the panel may have. But for the reasons stated previously, for the reasons stated in our brief, and in our reply brief, we believe that the circuit court error should be reversed. Anything, Justice Pierce? I'd like to compliment both lawyers for staying at their 10 minutes. Anything, Justice Calgary? Okay, and Mr. Guillanier, thank you both. Your briefing was excellent. Both of you, your argument today has been excellent. Justice Pierce is correct, you did go over, but I'm just kidding. I'm kidding. But your argument was absolutely excellent. And your briefing was excellent. So we love excellence. So thank you both.